THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE M. SUVADA, | ) | |
| | ) | Case No. 11-cv-7892 |
| Plaintiff, | ) | |
| | ) | Judge Edmond E. Chang |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| THE GORDON FLESCH | ) | **JURY DEMAND** |
| COMPANY, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


Colleen McLaughlin
Elissa Hobfoll
Greg Dierdorf, Law Clerk
The Law Offices of Colleen McLaughlin
1751 S. Naperville Rd., Ste. 209
Wheaton, IL 60189
630.221.0305 p | 630.221.0706 f
colleen@cmmclaw.com
elissa@cmmclaw.com
greg@cmmclaw.com

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Michelle just did not know what to do.  She found out she had cancer and promptly called her employer to seek an accommodation. She asked if any other positions at the company were available to her. The company's abrupt response was that there were no other jobs available. During the same phone conversation the company asked Michelle to submit her resignation in writing.  Under these simple and succinct facts the EEOC issued a finding of Substantial Evidence of Discrimination determination.  P's SOAF ¶ 30.

**II.    Legal Standard**

In deciding whether Defendant is entitled to summary judgment, there must be no issues of material fact in dispute and all reasonable inferences must be considered in the light most favorable to the non-moving party. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.,* 129 S. Ct. 846, 849 n.1, (2009); *Malen v. MTD Prods., Inc.,* 628 F.3d 296, 303 (7th Cir. 2010).  Summary Judgment is simply inappropriate when the facts of this case are viewed in light of this standard.

**III.   Analysis**

Plaintiff (hereinafter "Plaintiff" or "Michelle") has asserted claims under the ADAAA and the IHRA based on identical facts. Michelle claims Defendant discriminated against her in two separate and distinct ways: 1) Disability Discrimination, by virtue of Defendant's failure to accommodate, and 2) Disability Discrimination, by subjecting her to an adverse employment action. A failure to accommodate claim is separate and distinct from a claim of discriminatory treatment. *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999).

The vast majority of material facts in this case are uncontested. Plaintiff's Statement of Additional Facts ("P's SOAF") and Plaintiff's Responses to Defendant's Statement of Facts ("Resp. D's SOF") present a clear picture of all the record facts. Defendant does not contest for purposes of this motion that Michelle is a qualified individual with a disability and that Defendant knew of Michelle's disability. *See* Def. MSJ at 6.

When all is said and done, the contested issues with respect to the failure to accommodate claims boil down to three; (1) whether Plaintiff initiated the interactive process, (2) whether Defendant appropriately engaged in the interactive process and, if so, (3) which party is responsible for the breakdown of the interactive process. With respect to the adverse employment action claim, there is only one contested issue; whether Defendant's actions caused Plaintiff to be constructively discharged. As set forth below, Plaintiff will address how the applicable case law precludes Defendant's right to summary judgment as a matter of law and highlight any contested facts that exist to preclude the entry of summary judgment in this matter.

    A.    **Defendant cannot show it is entitled to summary judgment on Plaintiff's failure to accommodate claim**

"Discrimination," under the ADAAA, includes "not making reasonable accommodations…." 42 U.S.C. § 12112(b)(5)(A). The only issue this court need address is the 3rd element of Michelle's prima facie case; whether a reasonable jury could find that Defendant failed to accommodate Michelle's disability. *Kotwica v. Rose Packing Co*., 637 F.3d 744, 748 (7th Cir. 2011). Def's Memo. pg. 6. Defendant appears to argue in the alternative. On the one hand Defendant claims Plaintiff resigned her employment "**before she informed GFC of her purported accommodation needs,**" which is to say that Plaintiff failed to properly initiate the interactive process. Def's Memo. pg. 5. On the other hand, Defendant claims that Plaintiff **"broke off"** the interactive process by resigning "**before the parties could engage in any**

**meaningful interactive process"** after she took "one step" and "did not take another step to continue the interactive process." Def's Memo. pg. 5, 7, 8. Regardless of the theory used, Defendant (1) either ignores the many disputed facts presented by Plaintiff's testimony or claims as uncontested facts it knows are disputed, and/or (2) misapplies or disregards well-established 7th Circuit case law which completely undercuts its theories of the case.

### 1. Plaintiff Initiated the Interactive Process

Once the employee informs the employer of her disability and desire for an accommodation "the ADA obligates the employer to engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) (internal quotations omitted). The employee's duty "requires *at most* that the employee indicate to the employer that she has a disability and desires an accommodation." *Equal Empl. Opportunity Commn. v. Sears*, 417 F.3d 789, 803 (7th Cir. 2005)(emphasis added). An employee need not explicitly request an accommodation and that key is notice to the employer, not the employee specifically identifying a particular accommodation. *Sears*, 417 F.3d at 804. No special language is required and "an employer cannot expect an employee to … know that he or she must specifically say, 'I want a reasonable accommodation.'" *Bultemeyer v. Fort Wayne Comty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996). The standard is exceedingly flexible, and courts have suggested that an employee need only express something akin to, "I want to keep working for you-do you have any suggestions?" *Miller v. Illinois Department of Corrections* F.3d 483, 486-487 (7th Cir. 1997). In the present case, Michelle did exactly that.

Despite Defendant's alternative theories, the record shows that Michelle did her part to initiate the interactive process and trigger Defendant's obligation to engage. On October

9, Michelle informed Defendant that she had cancer. D's SOF ¶46. During the same conversation, she expressed concern about the amount of work involved in the upcoming performance season, told Defendant that she "did not want to stop working," and asked if there were other jobs available for her at the company. D's SOF ¶48, 49, P's SOAF ¶14. Michelle's actions are nearly identical to the example found in *Miller*. Thus, it is Plaintiff's position that, based on these facts alone, as a matter of law, Michelle is entitled to a finding that she initiated the interactive process.

      Defendant tries to escape its obligation to engage by making an underdeveloped argument that Michelle did not appropriately or adequately initiate the interactive process somehow because she did not have medical documentation from her doctor in hand on October 9, that confirmed her need for a specific accommodation. Defendant appears to believe that this means that Defendant therefore could not know she was in need of an accommodation. Def's Memo. at pg. 6. This argument is fundamentally flawed.

      First, when Michelle requested the accommodation of a change in job assignment and advised that she did not want to stop working, she had limited information about her treatment plan, side effects that might affect her ability to work, or how much time she might need to take off. P's SOAF ¶ 14, D's SOF ¶¶ 46, 47. Based on these communications, Defendant can at most, argue ambiguity. Ambiguous notification does not relieve Defendant of its duty. "Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *Sears*, 417 F.3d at 804.

Second, "[an] employer cannot shield itself from liability by choosing not to follow up on an employee's request for assistance, or by intentionally remaining in the dark.") (emphasis added). *Id.* Michelle obtained notes from her doctor, but Defendant did not ask for any and told her she didn't need them. P's SOAF ¶6. These facts are notably missing from Defendant's statement of facts. But they are facts a jury could use to find that Plaintiff did properly initiate the interactive process.

### 2. Defendant Did Not Meet its Duty to Engage in the Interactive Process

The real dispute actually arises over what happened after Plaintiff initiated the interactive process. The purpose of the interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

Once the interactive process has begun, the employer has the duty to engage in a "flexible give-and-take with the disabled employee so that together they can determine what accommodation would enable the employee to continue working." *Sears*, 417 F.3d at 805 (citing *Gile*, 213 F.3d at 373). The interactive process "requires participation by both parties," and when assessing whether an employer met their obligation, courts in the Seventh Circuit "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Beck v. Univ. of Wisc. Bd. Of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). As part of the "give-and-take," an employer "may not simply reject [an employee's request for accommodation] without offering other suggestions or at least expressing a willingness to continue discussing possible accommodations." *Sears*, 417 F.3d at 806.

For example, in *Gile*, the Seventh Circuit found the defendant liable for a failure to accommodate. The plaintiff requested a switch from the night shift to a day shift to

accommodate a psychological condition. *Id.* The defendant refused the plaintiff's request and "did nothing to engage with [the plaintiff] in determining alternative accommodations that might permit [the plaintiff] to continue working. *Id*. [The defendant] provided no help at all except to suggest that [the plaintiff] 'just resign and stay home.'" *Id.* The defendant argued that the plaintiff could have obtained a job transfer through the company's bidding process, without the defendant's help, and the plaintiff's failure to do so absolved their duty to engage in the interactive process. *Id.* at 373-374. The court rejected this argument on the grounds that employers are obligated to "identify the full range of alternative positions for which the individual satisfies the employer's legitimate, nondiscriminatory prerequisites" and consider "transferring the employee to any of these other jobs." *Id.* (quoting *Dalton v. Subaru-Isuzu Automotive, Inc.*, 141 F.3d 667, 678 (7th Cir. 1998)).

Additionally, in *Sears*, the Seventh Circuit denied a motion for summary judgment where a reasonable jury could have concluded that the defendant failed to engage in the interactive process. 417 F.3d at 808. The plaintiff told her supervisors that due to her disability she was having trouble reaching her work area and specifically requested to use a shortcut though the stockroom to accommodate this issue. *Id.* at 807. Defendant denied the request, and did not further engage the plaintiff to discuss alternate accommodations. *Id.* The court likened this case to *Gile*, in that the "[the plaintiff] requested accommodations, [the defendant] denied her request, and the [the defendant] disengaged from the process." *Id.* at 808. In denying a motion for summary judgment, the court held that while "[the defendant] was not obligated to provide this accommodation, [] it also could not simply reject the request and take no further action. A reasonable jury could conclude however, that is exactly what happened." *Id.* at 807.

The facts of this case bear a strong resemblance to those of *Gile* and *Sears*. In both cases, the employer rejected a request for accommodation without attempting to identify an alternative accommodation, which is precisely what happened when Michelle requested an accommodation from Defendant. P's SOAF ¶¶ 19-23. Here, Michelle advised Defendant about her disability and requested an accommodation. P's SOAF ¶ 14, D's SOF ¶¶ 46, 47. Shockingly, Defendant admits that, with respect to Michelle, it nothing to ascertain what its responsibilities were under the ADA to engage in an interactive process. P's SOAF ¶ 24. In fact, Defendant responded to Michelle's request for an accommodation by asking if she was giving 2 weeks' notice and later telling Michelle she "would need her resignation in writing." P's SOAF ¶¶ 14, 17. It reasoned that it did not talk about Michelle's health treatment or other ways for her to seek accommodation because it did not believe it had any obligation to do so and did not think she was seeking an accommodation. P's SOAF ¶ 21, 22, 23. A reasonable jury can surely conclude that, under these facts, Defendant foreclosed upon the possibility of a continued discussion on the matter. Based on material similarities with *Giles* and *Sears*, Seventh Circuit cases, a reasonable jury could conclude that Defendant failed to engage in the interactive process and is liable under the ADAAA.

      **3.**      **Contested issues of material fact preclude summary judgment on Michelle's failure to accommodate claim.**

The many contested facts in the record surrounding what was and what was not said on October 9, preclude summary judgment. In response to Michelle's inquiry into any other available positions, Defendant told her that it did not know of any jobs that were available. D's SOF ¶ 50. But, Defendant claims it also advised Michelle to check the website for other possible jobs and Plaintiff denies this fact. P's Resp. D's SOF ¶51, P's SOAF ¶ 15. Defendant claims it told Michelle to contact HR if she had any questions because they manage the website and

Michelle denies she was told to contact HR for any reason during that conversation. P's Resp. D's SOF ¶51, P's SOAF ¶¶15, 16. Michelle claims she told Defendant that she did not know what to do or what her options were and asked for advice on how to proceed. P's SOAF ¶ 11. Defendant denies that Michelle made these statements, but does acknowledge she was asking for Plaintiff to ask her or tell her specifically what she wanted. P's SOAF ¶ 11, 13. There were only two people who participated in the phone call of October 9, and liability may very well rest on whose version of the facts the jury believes.

While it is contested whether Defendant actually referred Michelle to its website, even if this is true, this fact actually hurts Defendant's case. P's SOAF ¶15. Even if Slouka did refer Plaintiff to the jobs posted on the GFC website, employers are not considered to have engaged in a good faith interactive process by simply referring the disabled individual to a list of job openings. *See Hendricks-Robinson*, 154 F.3d 685, 695 (7th Cir. 1998) (company policy was inconsistent with the employer's duty under the ADA where disabled individuals would only be considered for a certain class of jobs if "the employee independently learn[ed] about the vacancy and applie[d] for the job.")); *compare Carter v. Nw. Airlines, Inc.*, 93 Fed.Appx. 944, 947-948 (7th Cir. 2004) (holding the defendant engaged in the interactive process where the defendant spoke with the plaintiff to identify his skills, interests, and educational background then suggested several jobs that met this criteria.); *McRae v. Potter*, 46 F.App'x 371, 373 (7th Cir. 2002)(the court disagreed with plaintiff's assertion that defendant "saddled him" with the burden of finding an alternate job where the defendant sought out vacant jobs on plaintiff's behalf and allowed plaintiff to follow up on those vacancies on company time.).

The same holds true for Defendant's alleged referral of Plaintiff to HR. P's SOAF ¶16. This fact also hurts Defendant's case. During her deposition, Slouka admitted that

she did not consider the ADAAA during her conversation with Plaintiff. P's SOAF ¶23. She also stated that she "would never" suggest that Plaintiff contact HR to discuss possible accommodations because she believed that Plaintiff was required to ask for a specific accommodation at the outset. P's SOAF ¶21. Additionally, Defendant's own Human Resources Manager demonstrated a fundamental misunderstanding of the ADAAA by failing to recognize that Plaintiff's request was enough to trigger the interactive process. P's SOAF ¶ 27. As such, the fact that Defendant misunderstood its obligation under the ADAAA and *did not recognize that Plaintiff had triggered the interactive process*, leads to the reasonable inference that Defendant could not have engaged in the interactive process. Based on this inference, any action that Defendant may or may not have taken during the conversation could not be seen as satisfying Defendant's obligation under the ADAAA.

### 4. Defendant caused the Break down in the interactive Process Because it Failed to Respond to Michelle.

The fact that Michelle quit (i.e. was constructively discharged) does mean that she was responsible for the breakdown of the interactive process *per se*. D's Memo at 8-10. In *Sears*, the Seventh Circuit found a defendant liable for failure to accommodate despite the fact that the plaintiff quit, recognizing that "[the] last act in the interactive process is not always the cause of a breakdown, however, and courts must examine the process as a whole to determine whether the evidence requires a finding that one party's bad faith caused the breakdown." 417 F.3d at 805. It must be noted that an employer could be acting in bad faith when it "fails to communicate, by way of initiation or response." *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). In the present case, Defendant failed to respond to Plaintiff's request for an accommodation. In this way, the Defendant resembles the defendant in *Sears*. As such, a reasonable jury could find that, regardless of the fact that Plaintiff quit, Defendant is liable for

the breakdown in the interactive process because it failed to respond to Plaintiff's original request.

### 5. Defendant's Reliance on Outside Jurisdictions is misplaced.

In its brief, Defendant relied heavily on the fact that Plaintiff resigned from her position shortly after initiating the interactive process as evidence that she is responsible for the breakdown in the interactive process. D's memo at pg. 8-9. To support this contention, Defendant introduced several cases with no precedential value, each of which is materially distinguishable from the present case in that the defendants had already engaged the plaintiff in the interactive process and the process was ongoing at the time the plaintiffs in those cases quit.

In *Loulseged v. Akzo Nobel Inc.*,178 F.3d 731, 732 (5th Cir. 1999), several accommodations provided with an alternative potential accommodation pending when plaintiff quit. In *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 225 (2011), defendant requested medical documentation of the disability, that plaintiff did not supply and plaintiff quit after defendant refused accommodate without it. In *Rennie v. United Parcel Service*, F.Supp.2d 159, 170 (D.Mass. 2001), the defendant was in the process of accommodating a deaf plaintiff's request for a translator at the time the plaintiff quit. The instant case is wholly distinguishable. Defendants in *Loulseged*, *Griffen*, and *Rennie* were already engaged in the "give-and-take" required by the ADAAA and at the time the employees quit. Here, Defendant made zero contributions to the interactive process and did nothing to engage or advise Michelle.

### B. Defendant Subjected Michelle to an Adverse Employment Action

Defendant baldly asserts, without citation to law or record fact, that there was no adverse employment action. D's Memo. pg. 12. In doing so, it completely ignores Michelle's constructive discharge claims. There is no doubt that constructive discharge is an adverse

employment action. *Barton v. Zimmer, Inc.,* 662 F.3d 448, 453-454 (7th Cir. Ind. 2011)(constructive discharge is a form of adverse employment action for the purposes of anti-discrimination laws). Constructive discharge can take two different forms. *Fischer v. Avanade, Inc.,* 519 F.3d 393, 409 (7th Cir. 2008). Under the first approach, the plaintiff must demonstrate a discriminatory work environment even more egregious than the high standard for a hostile work environment. *Id.* Defendant here erroneously focuses on this first form, even though this is not a hostile work environment case. D's Memo. pg. 11-12. Michelle is proceeding under the second approach, the approach Defendant completely ignores. Here courts have held that when an employer acts in a manner that communicates to a reasonable employee that she will be terminated, and then the plaintiff resigns, the employer's conduct may amount to a constructive discharge. *Id.* With the second approach "constructive discharge … occurs where, based on an employer's actions, 'the handwriting is on the wall' and the axe was about to fall." *Fischer v. Avanade, Inc.,* 519 F.3d 393, 409 (7th Cir. 2008). See also *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 604 F.3d 490, 502 (7th Cir. Ill. 2010)(same) and; *E.E.O.C. v. Univ. of Chi. Hosps.,* 276 F.3d 326, 332 (7th Cir. 2002)(constructive discharge where "an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns). The issue that needs to be assessed by the trier of fact is; was the writing on the wall?

      Michelle's purpose in wanting to talk with Defendant on October 9, was to ask about the options she had; she wanted direction and did not know what she was supposed to be asking. P's SOAF ¶10. She was anxious about the reaction to her diagnosis and how she was going to continue to work. P's SOAF ¶6-10. She asked about other positions and, according to Michelle, Defendant's only response was that it did not know of any jobs and that there wasn't anything

that could be done in that regards.  P's SOAF ¶¶15-16.  According to Michelle, instead of answering her questions, Defendant berated her with statements such as "I need someone during performance season. You know that. Are you going to be able to do it?  I'm going to need to know.  You need to let me know."  All Michelle had available as a reply at that time was "I don't know," and "I don't know what to do."  P's SOAF ¶12. At that point, Defendant admits that it asked Michelle, "Are you giving me your two weeks' notice?" P's SOAF ¶14.  In response, Michelle said that "she didn't want to stop working."  P's SOAF ¶14.  Michelle told Slouka she "didn't see any other options and guessed she would have to quit."  P's SOAF ¶17.  After that, Defendant told Michelle that it "would need her resignation in writing," but it denies there was any discussion regarding having no choice but to resign P's SOAF ¶¶16,17.

    By the end of the conversation Michelle felt that Defendant had made it exceedingly clear that her choices were to resign or be terminated.  P's SOAF ¶¶ 10-17. A trier of fact could conclude from these facts that the writing was on the wall.  If this is not enough, it is clear from Defendant's subsequent actions that it too believed that it was going to terminate Michelle. Immediately after Defendant found out Michelle had cancer, denied her request for accommodation, and told her that there were no other jobs available, but before it received her written resignation, it contacted a temporary agency to secure a replacement for Michelle and scheduled the replacement to start for the following day. P's SOAF ¶25.  A jury might seriously question why Defendant would "immediately" call a temp agency to replace Michelle if the writing was not on the wall.

C.     **Defendant Violated the Illinois Human Rights Act[1].**

1.     **Discrimination - Failure to accommodate**

In its Motion, Defendant states that it is moving for summary judgment on "all of Plaintiff's [discrimination] claims.[2]"  D's Motion at ¶3.  However, in its Memorandum, Defendant does nothing to address the IHRA failure to accommodate claim and simply proclaims, without citation, that it took "no adverse action" against Plaintiff. D's Memo. at pg. 13.  Although Defendant does not refer to its obligation to accommodate a disabled employee under the IHRA, the fact is that the IHRA imposes upon the employer similar responsibilities to accommodate disabled employees as does the ADAAA. Def's Memo at. 12-13, 56 Ill. Adm. Code 2500.40, *Bixby v. JP Morgan Chase Bank, N.A.,* 2012 U.S. Dist. LEXIS 32974, *41-42 (N.D. Ill. Mar. 8, 2012) (The IHRA forbids discrimination in the workplace and requires employers to offer reasonable accommodations to employees with disabilities.).  Because Defendant does not address Plaintiff's IHRA failure to accommodate claim, in any way, it has failed to meet its burden and summary judgment on this claim cannot be granted. *Obrycka v. City of Chicago,* 2012 U.S. Dist. LEXIS 22818, *34-35 (N.D. Ill. Feb. 23, 2012), citing *Clarett v. Roberts,* 657 F.3d 664, 674 (7th Cir. Ill. 2011)("undeveloped arguments are considered waived.").

Perhaps Defendant does not address Plaintiff's IHRA failure to accommodate claim because it concedes that Plaintiff requested a reasonable accommodation when she inquired about alternative positions after her cancer diagnosis.  D's Memo. at pg. 3. *EEOC v. United Airlines, Inc.,* 2012 U.S. App. LEXIS 18804 (7th Cir. Ill. Sept. 7, 2012)(reassignment to

---

[1] Plaintiff echoes Defendants position that "under the IHRA, Illinois courts look to the standards applicable to analogous federal claims," such as the ADA.  D's Memo at pg. 13.
[2] Plaintiff has voluntarily dismissed her ERISA claims.

alternative position may be a reasonable accommodation), 42 U.S.C. § 12111(9). Even if Defendant had addressed Plaintiff's IHRA failure to accommodate claims, as addressed above, in Section IIIA - summary judgment must be denied because Plaintiff initiated the interactive process and there are contested issues of material fact as to whether Defendant failed or refused to engage in it.

### 2. Discrimination - Adverse employment action

Defendant's sole argument with respect to the IHRA is that "no adverse action was taken" against Plaintiff because of her disability. As stated above, in Section IIIB Defendant simply ignores Plaintiff's claim that she was constructively discharged and that constructive discharge is an adverse employment action. *Barton v. Zimmer, Inc.,* 662 F.3d 448, 453-454 (7th Cir. Ind. 2011)(constructive discharge is a form of adverse employment action for the purposes of anti-discrimination laws). The analysis provided above with respect to the disputed issues of material fact is just as applicable to Defendant's argument under the IHRA as it is for the ADAAA claims.

### IV. Conclusion

For the above stated reasons, Plaintiff respectfully requests this Court enter an order denying Defendant's Motion for Summary Judgment.

Dated: October 19, 2012                           RESPECTFULLY SUBMITTED

                                                                  /s/ Colleen McLaughlin
                                                                  Colleen McLaughlin
                                                                  One of the Attorneys for Plaintiff

The Law Offices of Colleen McLaughlin
1751 S. Naperville Rd., Ste. 209
Wheaton, Il 60189
630.221.0305 p | 630.221. 0706 f

## CERTIFICATE OF SERVICE

I, Colleen McLaughlin, an attorney, certify that on October 19, 2012, I caused a copy of the foregoing **Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment** to be served via email upon the below listed attorneys of record in the above captioned matter, pursuant to the parties' agreement to accept service of documents via e-mail:

H. Robert Kilkelly – bobkilkelly@leekilkelly.com
Paul W. Schwarzenbart – pschwarz@leekilkelly.com
**LEE, KILKELLY, PAULSON & YOUNGER, S.C.**
One West Main Street
P.O. Box 2189
Madison, WI 53701-2189
608.256.9046


Brian V. Alcala – bvalcala@uhlaw.com
Nicholas Anaclerio – nanaclerio@uhlaw.com
**UNGARETTI & HARRIS LLP**
70 West Madison Street, Suite 3500
Chicago, IL 60602
312.977.4400


/s/ Colleen McLaughlin
Colleen McLaughlin
One of the Attorneys for Plaintiff

Colleen McLaughlin
Elissa Hobfoll
Greg Dierdorf, Law Clerk
The Law Offices of Colleen McLaughlin
1751 S. Naperville Rd., Ste. 209
Wheaton, IL 60189
630.221.0305 p | 630.221.0706 f
colleen@cmmclaw.com
elissa@cmmclaw.com
greg@cmmclaw.com